IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN T. W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-00030-BT |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven T. W.[1] filed a civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Commissioner's decision is AFFIRMED.

**Background**

Plaintiff alleges that he is disabled due to a variety of impairments, including opioid use disorder, depression, and bipolar disorder.[2] Administrative Record 154-55 ("A.R.") (ECF No. 13-1). After his applications for disability insurance benefits

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Plaintiff's alleged impairments also include various physical impairments, but his physical impairments are not at issue in this appeal. Pl.'s Br. 3 (ECF No. 19).

1

and supplemental security income were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing took place in Dallas, Texas, on August 9, 2016. A.R. 152. At the time of the hearing, Plaintiff was 45 years old. *See id.* 165. He has a high school education, can communicate in English, and has past work experience as a valet, cashier, installation technician, and ticket agent. *Id.*

The ALJ found that Plaintiff was not disabled and, therefore, not entitled to disability insurance benefits or supplemental security income. *Id.* 166-67. At step one of the five-step sequential evaluation,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since June 11, 2014. *Id.* 154. At steps two and three, the ALJ found that Plaintiff had the severe impairments of gout, degenerative disc disease of the lumbar spine, hypertension, affective disorders—bipolar disorder, major depressive disorder, a mood disorder, and an adjustment disorder—as well

---

[3] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

as a substance abuse disorder, opioid addiction; nonetheless, the ALJ found that his impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* 154-55. At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work and determined that he could not perform his past work. *Id.* 160-65. At step five, relying on the testimony of a vocational expert, the ALJ found that Plaintiff can work as an order clerk, an optical goods assembler, and a lens inserter—jobs that exist in significant numbers in the national economy. *Id.* 166.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Council affirmed. *Id.* 6. Plaintiff then filed this action in federal district court and argues the ALJ erred in finding him not disabled because he failed to analyze the treating sources' opinions under 20 C.F.R. § 404.1527(c)'s factors when "rejecting" them; as a result, Plaintiff contends that the RFC with respect to his mental limitations is not supported by substantial evidence.

**Legal Standards**

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such

3

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923 ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'") (quoting *Perez*, 415 F.3d at 461). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392-93 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support her decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

**Analysis**

In July 2016, Ali Nazempoor, Ph.D., Plaintiff's treating psychologist, opined that Plaintiff's mental impairments could be expected to interfere with his ability to work from 10% up to 20% of the time, and that Plaintiff is significantly limited in the ability to maintain attention for extended periods; sustain an ordinary routine without special supervision; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers; respond appropriately to changes in a routine work setting; and deal with normal work

stress. A.R. 1393-94. Dr. Nazempoor further opined Plaintiff is extremely limited with respect to his ability complete a normal work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* 1393. Dr. Nazempoor opined Plaintiff met listings 12.04 and 12.06. *Id.* 1037-47.

In August 2016, Dhiren Patel, M.D., Plaintiff's treating psychiatrist, similarly opined that Plaintiff's impairments could be expected to interfere with his ability to work from 10% up to 20% of the time, and that he is significantly limited in the ability to carry out short and simple instructions; maintain attention for extended periods; sustain an ordinary routine without special supervision; work in coordination with others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers; respond appropriately to changes in a routine work setting; and deal with normal work stress. *Id.* 1378-79. Dr. Patel further opined Plaintiff is extremely limited with respect to his ability to perform activities within a schedule; maintain regular attendance; and be punctual within customary tolerances. *Id.* 1378. Dr. Patel opined that Plaintiff met listing 12.04. *Id.* 1380-91.

The ALJ specifically addressed Dr. Patel's and Dr Nazempoor's opinions in his written decision, but he declined to give either opinion controlling weight.

Instead, the ALJ found that, although Plaintiff had the mental RFC to understand, remember, and carry out only simple tasks and instructions, his mental impairments are not disabling, alone or in combination with his other physical impairments. *Id.* 152. The ALJ did not find that any of Plaintiff's impairments met or equaled a listing. *Id.* 148.

In his written decision, the ALJ explained:

> I have . . . considered the opinion of Dhiren Patel, D.O., the claimant's treating source at Solace Counseling Associates, that the claimant had a global assessment of functioning (GAF) score of 35, had marked limitations in the paragraph B criteria and had experienced three extended episodes of decompensation (Ex. B19F/5, 6, 15).
>
> I give little weight to this assessment, even though Dr. Patel is a treating source, because he did not cite evidence in support of his assessment (Ex. B19F/5- 15). Also, his own treatment notes do not support marked limitations because, as will be discussed below, the claimant typically denied mood problems, complained only of anxiety, and exhibited only deficits in affect. Finally, other treatment notes of record are inconsistent with Dr. Patel's assessment because, as will be discussed below, the claimant exhibited a normal mood and affect during mini-psychological examinations when he presented for treatment of his physical impairments.
>
> Because Dr. Patel's treating source opinion is inadequately supported and inconsistent with substantial evidence of record, including his own treatment notes, this opinion will receive little weight (20 CFR 404.1527 and 416.927).
>
> Similarly, another of the claimant's treating sources, Ali Nazempoor, Ph.D., opined in July 2016 that the claimant had multiple impairments, a GAF score of 50, four or more extended episodes of decompensation, and extreme

6

limitation in the other paragraph B criteria (Ex. Bl 4F/2-12; B15F/1- 11). I give little weight to this opinion for many reasons. First, the claimant testified that he had only started seeing Dr. Nazempoor in March 2016, which means that Dr. Nazempoor has not established a longitudinal treating relationship with the claimant (20 CFR 404.1527(c)(2) and 416.927(c)(2)). He attributed the claimant's limitations, in part, to an intellectual disability (Ex. B14F/7), but the claimant has not even alleged such an impairment. In addition, again, the claimant has not experienced even one extended episode of decompensation, much less four.

Finally, while Dr. Nazempoor cited anxiety, mood swings, sadness, and low energy with difficulty focusing, concentrating, finishing tasks, resting, and sleeping (Ex. Bl 4F/3; B15F/2), these are merely symptoms rather than objective findings because, again, the claimant only exhibited deficits in affect. Because this treating source opinion is inadequately supported and inconsistent with substantial evidence of record, including the claimant's own allegations, it will receive little weight (20 CFR 404.1527(c)(3), (4) and 416.927(c)(3), (4)).

*Id.* 157-58.

The ALJ also thoroughly discussed the paragraph B criteria:

> ln activities of daily living, the claimant has mild restriction. The claimant reported during the application process, testified, and/or told doctors that he had no energy or motivation and had insomnia (Ex. B4E/2; B7E/2, 5; B4F/199, 205, 211; B5F/2). However, the claimant attributed his insomnia in large part to his pain (Ex. B4E/1; B7E/1). While he reported in connection with the application process that his lack of motivation caused him to go long periods without changing his clothes or showering and to have difficulty even getting up to use the restroom, he told his consultative examiner that he did not have problems maintaining personal hygiene and exhibited adequate hygiene at that time (Ex. 5E/5; B7E/2; B5F/2, 3). Accordingly, the claimant's restriction

in daily activities, if any, due to mental impairments is only mild.

In social functioning, the claimant has mild difficulties. The claimant reported during the application process, testified, and/or told doctors that he had mood swings, felt worthless, and was easily agitated with difficulty controlling his emotions (Ex. B4E/7; B7E/7; B5F/2). However, he testified that he would isolate instead of lash out at others when he had these symptoms. Also, while the claimant reported that he had no motivation to be social and did not attend church, he also reported that he had no difficulty getting along with others, could get along okay with authority figures, had a good relationship with his mother, confided in two friends and his sister, and sometimes watched movies with his friend (Ex. B4E/5-7; B7E/5-7; B5F/2).

Therefore, while the claimant has symptoms in this area that are supported by deficits in affect discussed below and that result in his preferring to be alone, he is still capable of interacting appropriately with others when necessary. Accordingly, he has only mild difficulty in his ability to maintain social functioning.

With regard to concentration, persistence, or pace, the claimant has moderate difficulties. The claimant generally reported during the application process, testified, and/or told doctors that he had difficulty thinking clearly, expressing himself; remembering, completing tasks, understanding, following instructions, and handling stress or change (Ex. B4E/6, 7; B7E/6, 7; B5F/2). The claimant's field office interviewer observed that the claimant had difficulty concentrating in that he rambled in response to questions and would go off course onto other subjects (Ex. Bl E/2), and this is consistent with my observations of the claimant during the hearing.

However, the claimant was also quite articulate during the hearing, was good at explaining himself, and remembered dates well. While he reported during the application process and/or testified that he could not concentrate on reading, he reported that he could make

> it through a movie (Ex. B4E/6; B7E/5, 6). In addition, the claimant told his consultative examiner that he needed reminders to take medication and had difficulty managing finances (Ex. B5F/3). However, he reported during the application process that he did not need reminders to engage in personal care or take medication and could handle money as before (Ex. B4E/3-5; B7E/3-5). Finally, the claimant exhibited deficits in affect during mental status examinations and was irritable, overly talkative, or restless during hospitalizations, but his examinations were otherwise normal, including showing no deficits in thought process and content, memory, and concentration (Ex. B3F/3; B4F/207, 209; B5F/3, 4; B6F/7, 8, 11, 16, 24, 26; B8F/2, 6, 12, 20, 29, 31, 33, 35, 37). The claimant's apparent difficulty staying focused, primarily during conversations, and his deficits in affect show more than mild difficulty in his ability to maintain concentration, persistence, or pace. However, for the reasons discussed above, this difficulty is moderate rather than marked.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation that have been of extended duration. Again, the claimant was only hospitalized for two days in July 2014 (Ex. B4F/204), and in June 2015, he was only treated for four days (Ex. B6F/4; B8F/39).
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

*Id.* 157-60.

Plaintiff argues that remand is appropriate because the ALJ failed to consider the factors under 20 C.F.R. § 404.1527(c) when "rejecting" Dr. Patel's and Dr Nazempoor's opinions in the absence of a controverting treating or examining physician's opinion. Pl.'s Br. 8-9, 19. Because of this alleged error, Plaintiff

9

contends that the ALJ's RFC regarding Plaintiff's mental limitations is not supported by substantial evidence. The Court will first address whether the ALJ adequately considered § 404.1527(c)'s factors in giving the treating sources' opinions "little weight," before determining whether Plaintiff's mental RFC is supported by substantial evidence.

**A**.

With respect to claims filed before March 27, 2017, the ALJ must evaluate medical opinion evidence in the manner prescribed by 20 C.F.R. § 404.1527. Under § 404.1527(a)(1), "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Acceptable medical sources include licensed physicians—both medical and osteopathic doctors—and licensed psychologists. 20 C.F.R. § 404.1502(a)(1)-(2). A treating source "means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). "A treating source's medical opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." *Bentley v. Colvin*, 2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (quoting 20 C.F.R. §§ 404.1572(c)(2), 416.927(c)(2); citing *Newton v. Apfel,* 209 F.3d 448, 455 (5th

Cir. 2000)). However, contrary to Plaintiff's argument that "special deference . . . must be accorded treating source opinions when they are not accorded controlling weight," ALJs are free to assign little or no weight to treating physicians' opinions for good cause. *Newton*, 209 F.3d at 455-56 (citing *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994)); Pl.'s Br. 26; Pl.'s Reply 2 (ECF No. 25). Good cause exists when "relative to other experts . . . the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton,* 209 F.3d at 456 (citing *Brown v. Apfel,* 192 F.3d 492, 500 (5th Cir. 1999); *Greenspan,* 38 F.3d at 237; *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel,* 530 U.S. 103, 107 (2000)).

Unless controlling weight is given to a treating source's opinion per § 404.1527(c)(2), an ALJ is to consider the following factors in determining the weight to give to "any medical opinion": (1) the physician's examining relationship; (2) the nature and extent of the treatment relationship: length of treatment and frequency of examination; (3) the support a medical source presents for its opinion, in terms of objective evidence and explanation; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician; and (6) other factors, including a medical source's amount of understanding of "our disability programs and their evidentiary requirements." 20 C.F.R. § 404.1527(c). Medical sources other than treating sources do not carry the same "considerable weight," but they still must be considered. *See Robinson v. Astrue,* 271 F. App'x

394, 396 (5th Cir. 2008) (per curiam) ("Wong performed a one-time consultative examination of Robinson and therefore is not due special deference as a treating physician."); *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

The Court finds the ALJ's decision reflects that he adequately analyzed the factors under 20 C.F.R. § 404.1527(c) before assigning "little weight" to Dr. Patel's and Dr. Nazempoor's opinions. A.R. 157-58, 164. Plaintiff is correct that "'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).'" *Kneeland*, 850 F.3d at 760 (emphasis in original) (quoting *Newton*, 209 F.3d at 453) (noting that the regulation currently appears at 20 C.F.R. § 404.1527(c)(2)); Pl.'s Br. 20. *Kneeland* further counsels that "the regulations make clear that opinions from examining physicians must be considered" and that "fundamentally, the ALJ cannot reject a medical opinion without explanation." *Kneeland*, 850 F.3d at 760 (citing *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979)) (internal quotation marks and brackets omitted).

Here, however, the ALJ explains his decision to give both opinions "little weight," and his explanation demonstrates that he considered § 404.1527(c)'s factors. The ALJ gave "little weight" to Dr. Patel's opinion, "even though [he] is a treating source," because "he did not cite evidence in support of his assessment"; "his own treatment notes do not support marked limitations"; and "other

12

treatment notes of record are inconsistent with Dr. Patel's assessment." A.R. 157. These reasons indicate that the ALJ considered the Dr. Patel's examining relationship with Plaintiff; the support he presented for his opinion, in terms of objective evidence and explanation; and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(1), (3)-(4). The ALJ also mentioned that Dr. Patel is "the claimant's treating source at Solace Counseling Associations" and cited to the treatment records from Solace Counseling, which evidences that he considered the nature and extent of the treatment relationship and Dr. Patel's specialization. A.R. 157; 20 C.F.R. § 404.1527(c)(2), (5). It is clear, therefore, that the ALJ considered the regulatory factors when determining the weight to assign Dr. Patel's opinion.

Similarly, the ALJ also afforded "little weight" to Dr. Nazempoor's opinion, "another of the claimant's treating sources," because "Dr. Nazempoor had not established a longitudinal relationship with the claimant"; "[h]e attributed the claimant's limitations, in part, to an intellectual disability, but the claimant has not even alleged such an impairment"; and "the claimant has not experienced even one extended episode of decompensation, much less four." A.R. 158. In weighing Dr. Nazempoor's July 2016 opinion and determining that he had not established a longitudinal relationship with Plaintiff, the ALJ noted "the claimant testified that he had only started seeing Dr. Nazempoor in March 2016," indicating that the ALJ considered the Dr. Nazempoor's examining relationship as well as the nature and extent of the treatment relationship with. *Id.*; *see* 20 C.F.R. § 404.1527(c)(1)-(2).

13

The ALJ's acknowledgement that Dr. Nazempoor partly attributed Plaintiff's mental limitations to an intellectual disability, which the claimant had not alleged as an impairment, and cited several of Plaintiff's symptoms such as "sadness, anxiety, and mood swings" without making objective findings, evidences that the ALJ considered the support Dr. Nazempoor presented for his opinion, in terms of objective evidence and explanation. *See* 20 C.F.R. § 404.1527(c)(3). Further, the ALJ noted that Dr. Nazempoor's opinion was inconsistent with the substantial evidence of record. A.R. 158; *see* 20 C.F.R. § 404.1527(c)(4). And the ALJ designated Dr. Nazempoor as a Ph.D., rather than an M.D., indicating the ALJ's awareness of Dr. Nazempoor's specialty as a psychologist rather than a psychiatrist. A.R. 158; *see* 20 C.F.R. § 404.1527(c)(5). Thus, while the ALJ perhaps could have expanded upon his analysis of § 404.1527(c)'s factors, procedural perfection is not required. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) (citing *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). Accordingly, the Court concludes that the ALJ adequately considered the regulation's factors when assigning both treating sources' opinions "little weight."

**B.**

Because Plaintiff asserts that the ALJ inadequately applied § 404.1527(c)'s factors and gave "little weight" to the treating sources' opinions, he maintains that the ALJ's mental RFC finding is not supported by substantial evidence. Pl.'s Reply 2. The Court concludes Plaintiff's mental RFC is supported by substantial evidence.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor*, 706 F.3d at 603). "'[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.'" *Id.* (brackets in original) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (per curiam)). "If supported by substantial evidence, the Commissioner's findings are deemed conclusive, and the court must accept them." *Jones v. Astrue,* 851 F. Supp. 2d. 1010, 1015 (N.D. Tex. 2012) (citing *Richardson,* 402 U.S. at 390). Substantial evidence in this context, "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted).

Here, substantial evidence supports Plaintiff's mental RFC. In making his RFC determination, the ALJ gave state agency psychological consultants James Murphy, Ph.D., and Matthew Wong, Ph.D.'s opinions "partial weight"; they found that "the claimant could understand, remember, and carry out detailed but not complex instructions; make basic decisions; attend and concentrate for extended periods; interact with others; accept instructions; and respond to changes in a routine work setting." A.R. 157, 164, 241, 255, 273, 289. Plaintiff is correct that the non-examining state agency consultants' opinions taken alone would not be substantial evidence. *See Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980) (per curiam) ("If it is true that the physicians who reported on [the claimant's]

condition did not even see him, this alone would not be substantial evidence on which to base an administrative decision."); *Kneeland*, 850 F.3d at 761 (quoting *Strickland v. Harris*, 615 F.2d 1103, 1109 (5th Cir. 1980)) ("Yet, 'the reports of physicians who did not examine the claimant, taken alone, "would not be substantial evidence on which to base an administrative decision."'"); *but see Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Ransom v. Heckler,* 715 F.2d 989, 993-94 (5th Cir. 1983) (per curiam)) ("We believe an ALJ may properly rely on a non-examining physician's assessment when, as in this case, those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician."). Here, however, the ALJ did not base his decision and RFC determination on Dr. Murphy and Dr. Wong's opinions alone. The ALJ's RFC assessment is based on "the State agency medical consultants' opinions to some extent, the objective medical record, and the record as a whole," though the Court also finds that his RFC reflects the "little weight" he accorded the treating sources' opinions. A.R. 157-58, 164-65. The ALJ did not completely reject the treating sources' opinions; instead, he assigned them "little weight" and explained his reasons for doing so, as mentioned above. *Id.* 157-58, 164. The resulting RFC reflects this "little weight" because, though the treating sources' and the state agency consultants' opinions express varying degrees of severity, they all agree that Plaintiff has "understanding and memory limitations," "concentration and persistence limitations," "social interaction limitations," as well as "adaptation limitations," which the ALJ accounted for in finding that
16

Plaintiff had the RFC to "understand, remember, and carry out only simple tasks and instructions." A.R. 160, 239-40, 253-54, 271-72, 287-88; A.R.2 750-51, 765-66 (ECF No. 13-2).

Additionally, in determining Plaintiff's mental RFC, the ALJ considered Plaintiff's activities of daily living compared with his alleged mental limitations; inconsistencies in Plaintiff's reported psychological symptoms and alleged mental limitations; and Plaintiff's appearance at the hearing before him. The ALJ found that Plaintiff's report that "he had to sit down to put on pants and did not change clothes daily, had difficulty getting in and out of the bath tub, showered with a shower chair, prepared only simple or microwaveable meals, had difficulty doing chores and walking around a grocery store, and often had help with lawn care, household chores, and shopping," partly due to his depression, to be inconsistent with his activities of daily living, since he was able to attend "numerous medical appointments of record," "grocery shop some," "do his laundry if his mother's caregiver did not do it," and "[drive] two to three times per week." A.R. 162; *see* A.R. 189, 211-14, 410-12, 421, 427-31; A.R.2 194-96, 232, 236-37, 243, 256-57, 260-63. Also contrary to his prior assertions, Plaintiff told the consultative examiner that he had no problem maintaining personal hygiene. A.R. 158, 162; A.R.2 195.

Regarding Plaintiff's reported psychological symptoms and appearance at the hearing, the ALJ noted that Plaintiff presented for treatment in July 2014 and reported suffering from "depression, anxiety, and passive suicidal ideation." A.R. 163; A.R.2 126, 141, 144-59. Plaintiff also "complained of depression and mania

17

during his consultative exam and June 2015 hospitalization," but during mental health appointments, he "almost always reported that his mood was okay and complained of only anxiety." A.R. 163; A.R.2 194-96, 204-05, 221-223, 266, 268, 270, 276, 284, 293, 295, 297, 299, 301. The ALJ found the contradictions in Plaintiff's alleged mental limitations compared with his activities of daily living and reported symptoms at mental health appointments inconsistent with "debilitating limitations in daily activities." A.R. 158, 162-63. These inconsistencies, together with the ALJ's own observation of Plaintiff's "difficulty answering the specific question asked during the hearing," the partial weight given to the state agency consultants' opinions, and the little weight assigned the treating sources' opinions, support the ALJ's RFC determination that Plaintiff is "limited to understanding, remembering, and carrying out simple, not detailed, tasks and instructions." A.R. 160, 164. Accordingly, the Court concludes that Plaintiff's mental RFC is supported by substantial evidence.

## Conclusion

The ALJ applied the correct legal standards, and substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act. Therefore, the hearing decision is AFFIRMED in all respects.

Signed March 28, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE